UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

OSMIN EFRAIN CAMPO-GIL,

      Petitioner,

    v.                                                            Case No.:  2:26-cv-00273-SPC-NPM

WARDEN OF ALLIGATOR
ALCATRAZ *et al.*,

      Respondents,

                         /

**<u>OPINION AND ORDER</u>**

Before the Court are petitioner Osmin Efrain Campo-Gil's Amended Petition for Writ of Habeas Corpus (Doc. 4), the government's response (Doc. 7), and Campo-Gil's reply (Doc. 9).  For the below reasons, the Court grants the petition.

**A. Background**

Campo-Gil is a 74-year-old Cuban native.  He entered the United States on August 27, 1994.  On November 6, 1997, he was convicted of sexual battery and sentenced to community control and probation.  He completed his sentence without violation and has committed no crimes since.  On June 13, 2002, an immigration judge ordered Campo-Gil removed.  Campo-Gil appealed unsuccessfully, and the removal order became final in 2003.  Immigration and Customs Enforcement ("ICE") was unable to execute the removal order, so it released Campo-Gil under an order of supervision.  Campo-Gil complied with

the terms of supervision for more than 20 years.  He currently lives in South Florida with his U.S. citizens wife, and he has two U.S. citizen children and four U.S. citizen grandchildren.

On November 2, 2025, local police arrested Camop-Gil at his home and handed him over to ICE, who issued a notice of revocation of release that day. He was detained at Alligator Alcatraz, but he has since been transferred to the Winn Correctional Center in Louisiana.  Campo-Gil challenges the legality of his detention under the Due Process Clause of the Fifth Amendment, *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Immigration and Nationality Act ("INA"), and implementing regulations.  He also argues the state officials running Alligator Alcatraz had no lawful authority to detain him.

**B. Jurisdiction**

Before addressing the merits of Campo-Gil's claim, the Court must address its jurisdiction.  The respondents argue two sections of the INA strip the Court of jurisdiction over this action.  They first point to a provision that bars courts from hearing certain claims.  It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  This jurisdictional bar is narrow.  "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'"  *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General.  Instead, we read the language to refer to just those three specific actions themselves.").  "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."  *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9).  The zipper clause only applies to claims requesting review of a removal order.  *See Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of

jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Campo-Gil does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order. Nor does he ask the Court to review the removal order. Rather, Campo-Gil challenges the legality of his detention under a framework devised by the Supreme Court for district courts to apply. *See Zadvydas*, 533 U.S. at 682 (stating the Court's limitation on post-removal detention "is subject to federal-court review."). A decision in Campo-Gil's favor would not impair ICE's ability to execute the removal order. The INA does not strip the Court of jurisdiction over this action.

## C. Legality of Detention

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. *Id.* Detention may continue after the removal period, but not indefinitely.

In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of

"assuring the alien's presence at the moment of removal." *Id.* at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." *Id* at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. *Id.* Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

*Id.* The presumptively reasonable six-month period for detention pending removal commences at the beginning of the removal period. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

The respondents argue Campo-Gil's petition is premature because his current detention has not exceeded the presumptively reasonable period. Their argument presumes the six-month presumptively reasonable period of detention resets each time a noncitizen is detained. That assumption is inconsistent with *Zadvydas*. It would effectively allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every 180 days. As the Eleventh Circuit recognized, "[t]he Supreme Court's stated rationale for establishing a presumptively reasonable

'6-month period' for detention pending removal supports our conclusion that this period commences at the beginning of the removal period." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Campo-Gil has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. ICE itself made that determination in 2003, and it has failed to procure travel documents or effect Campo-Gil's removal to Cuba or a third country in the more than 20 years since the removal order.

The burden thus shifts to the respondents. On January 15, 2026, ICE notified Campo-Gil of its intention to remove him to Mexico. ICE deportation officer Michael Phillips submitted a declaration stating ICE's intent to remove Campo-Gil to Mexico under DHS's March 30, 2025 guidance on third country removals. There are two problems. First, Judge Bryan E. Murphy of the District of Massachusetts set vacated the March 30, 2025 guidance in an Opinion and Order dated February 25, 2026. So it is not clear that ICE can proceed as planned. Second, Phillips acknowledges that four months into Campo-Gil's detention, ICE still has not contacted Mexican officials about accepting him into their country. There is no evidence before the Court suggesting Mexico is likely to accept Campo-Gil.

**D. Conclusion**

The Court finds no significant likelihood Campo-Gil will be removed in the reasonably foreseeable future. He is entitled to release from detention under *Zadvydas*. If removal becomes likely in the reasonably foreseeable future, DHS can detain Campo-Gil to "assur[e] [his] presence at the moment of removal." *Zadvydas*, 533 U.S. at 680. Campo-Gil's procedural challenges to the revocation of his release are moot, as are his challenges to the authority of Florida officials to detain him.

Accordingly, it is hereby **ORDERED:**

Osmin Efrain Campo-Gil Amended Petition for Writ of Habeas Corpus (Doc. 4) is **GRANTED**.

1. The respondents shall release Campo-Gil within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

2. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on March 2, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record